ST. PAUL, J.
 

 (dissenting). I dissent as to the ruling under the head, “Bills Nos. 70 and 71.” There were but three eyewitnesses to the killing of James Le Boauf — these two appellants and James Beadle, their codefendant. James Beadle did not take the stand as a witness; that left only two. These'two witnesses both testified that James Beadle fired the fatal shot,
 
 but did so only
 
 aftei
 
 James Le Bosuf had fired on Dr. Dreher and himself.
 
 On the truth or falsity of this last statement (italicized) the whole guilt or innocence of these two appellants depended; and they had perforce to impress upon the jury, if they could, the truth of their statement that the deceased was the aggressor and had assaulted Dr. Dreher and James Beadle with murderous intent. If the jury should believe their story then the jury must acquit; if the jury should
 
 not
 
 believe their story then the jury must convict.
 

 The case is therefore distinguishable from the ruling as applied in State v. Poole, 156 La. 434, 100 So. 613, and the authorities there collected, that
 
 when there are eyewitnesses to the hilling
 
 and a conflict of testimony between the witnesses for the state and those for the defendant as to who was the aggressor, the trial judge is vested with sound discretion to exclude evidence of prior threats by, and of the bad or violent character of, the deceased, if the preponderance of the testimony as to the overt act be against the accused, to the end that the trial may not be
 
 *1009
 
 converted into a trial of the deceased instead of a trial of the accused.
 

 We have no such case here; the preponderance of the testimony as to the overt act vel non is
 
 not
 
 against these defendants, for the state did
 
 not
 
 produce any
 
 testimony
 
 whatever on that subject. Hence the truth or falsity of the assertion that the deceased assaulted Dr. Dreher and James Beadle with murderous intent was dependent wholly on whether these appellants testified truly or falsely; and accordingly these appellants should (in my opinion) have been allowed to corroborate their own testimony by showing to the jury, if they could, the (alleged). had or violent character of the deceased and the (alleged) threats made by him against the life of Dr. Dreher.
 

 In other words'
 
 in this case
 
 we are not considering a mere ruling on evidence, dealing with the remoteness or relevancy thereof (as in the Poole Case, supra), hut with the far more fundamental question of whether these appellants were tried by the jury impaneled to try them, or merely by the judge who presided over the trial.
 

 I also dissent as to the ruling under the head “Bills Nos. 64, 65, 66, 67, 68, and 72.” As the evidence of these appellants as witnesses for themselves was not admissible against their eodefendant James Beadle (State v. Smith, 156 La. 685, 101 So. 22) and it would have been the duty of the judge to so instruct the jury if so requested (as he was and as he did), it follows that counsel for James Beadle had no more right to cross-examine these appellants than had any other member of the bar who might have been present during said examination; for their client had no more interest in said testimony than if it had not been given at all.
 

 And as to the prejudice which these appellants may have suffered by such cross-examination, it may be true that no particular .question and answer may be pointed to as
 
 specially
 
 prejudicial to them, hut the bare truth is that the mere fact that counsel for James Beadle, their codefendant, undertook to put them through a rigid cross-examination, must have sufficed to damn their testimony in the eyes of that jury, for juries may know no law, but jurymen know something of human nature and of the folk lore and popular maxims which so clearly depict it; and under circumstances such as we have here the jury must not have been slow to apply the familiar proverb that “when thieves fall out, honest men get their dues” — a saying generally true, hut none the less manifestly- prejudicial to the interests of these appellants situated as they were. Of course it is unnecessary for me to say that I refer to the falling out of the
 
 accused,
 
 not of their counsel.
 

 The other bills are all without merit.